UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

HARLAN GOLDBERG, H GOLD LLC, and
JARRET WILLIS,

               Plaintiffs,

   -against-

BESPOKE REAL ESTATE LLC, BESPOKE LUXURY
MARKETING LLC, BESPOKE REAL ESTATE
FLORIDA LLC, ZACHARY VICHINSKY, and CODY
VICHINSKY,

               Defendants.

----------------------------------------------------------------------x

Case No.: 23-CV-5614 (JPO)

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

---

**MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP**
*Attorneys for Defendants
Bespoke Real Estate LLC, Bespoke Luxury
Marketing LLC, Bespoke Real Estate Florida
LLC, Zachary Vichinsky and Cody Vichinsky*
100 Manhattanville Road, Suite 4E20
Purchase, New York 10577
(914) 681-8700

By:  Leonardo D'Alessandro, Esq.
      Michael A. D'Auria, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

   I: Goldberg's Claim for Retaliation Must Be Dismissed ............................................ 3

   II: Goldberg's Claims for Payment of Commissions Must Be Dismissed ................................ 4

   III: Willis' Claims for Hostile Work Environment, Disparate Treatment and Constructive Discharge Under 42 U.S.C. § 1981 Must Be Dismissed ........................................... 5

   IV: Goldberg's Claims for Hostile Work Environment, Disparate Treatment and Retaliation Under 42 U.S.C. § 1981 Must Be Dismissed ............................................ 6

SUMMARY OF COMPLAINT .............................................................................. 7

STATEMENT OF FACTS CONCERNING GOLDBERG PLAINTIFFS ..................................... 8

STATEMENT OF FACT CONCERNING WILLIS ........................................................ 11

ARGUMENT .......................................................................................... 12

   POINT I: LEGAL STANDARD FOR A MOTION TO DISMISS ......................................... 12

   POINT II: GOLDBERG FAILED TO STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW SECTION 740 ............................................. 13

      A: The Complaint Fails to State a Cause Of Action for Violation of Section 740 Based Upon the Alleged Hasson Client Interference Disclosure. ............................................. 14

      B: The Complaint Fails to State a Cause of Action for Violation of Section 740 Based Upon the Alleged Willis Criticism, Alleged Selling Restriction, Alleged Insults and Alleged Unwarranted Reassignment Disclosure Via Counsel ...................................... 15

      C: The Complaint Fails to State a Cause of Action for Violations of Section 740 Based Upon Alleged Denial of Commissions. ........................................................ 17

   POINT III: GOLBERG'S CAUSE OF ACTION FOR BREACH OF CONTRACT RELATING TO THE WALDORF TRANSACTION MUST BE DISMISSED FOR FAILURE TO PLEAD A PLAUSIBLE CLAIM ................................................................... 18

   POINT IV: GOLDBERG'S CAUSES OF ACTION FOR BREACH OF CONTRACT RELATING TO THE ASIA TRANSACTION, PARKLAND TRANSACTION AND OVERRIDE PROVISION MUST BE DISMISSED ............................................... 22

   POINT V: GOLDBERG'S CAUSE OF ACTION BASED ON PROMISSORY ESTOPPEL 23 MUST BE DISMISSED ......................................................................... 23

   POINT VI: GOLDBERG'S CAUSES OF ACTION FOR UNJUST ENRICHMENT AND... 24 QUANTUM MERUIT MUST BE DISMISSED BASED UPON THE EXISTENCE OF AN AGREEMENT ................................................................................ 24

   POINT VII: WILLIS AND GOLDBERG FAIL TO STATE PLAUSIBLE CAUSES OF ACTION FOR VIOLATION OF 42 U.S.C. § 1981 ............................................... 25

A: Willis Fails to Establish a Prima Facie Case of Hostile Work Environment and Constructive Discharge Under Section 1981 on the Theory Defendants Made His Working Conditions So Intolerable He Was Forced Into an Involuntary Resignation ........................ 27

B: Willis Fails to Establish a Prima Facie Case of Disparate Treatment Under Section 1981 Based on the Theory He Was Subjected to a "Discriminatory Selling Restriction," "Client Interference," "Discriminatory Demotion" and "Systematic Commissions Nonpayment" . 30

C: Goldberg Fails to Establish a Prima Facie Case of Hostile Work Environment Under Section 1981 ................................................................................................................................. 31

D: Goldberg Fails to Establish a Prima Facie Case of Disparate Treatment Under Section 1981 ................................................................................................................................................. 32

E: Goldberg Fails to Establish a Prima Facie Case of Retaliation Under Section 1981 ....... 32

CONCLUSION ................................................................................................................................. 34

Page(s)

Cases

483 F. App'x 613 (2d Cir. 2012) ................................................................... 29
*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ................................................................... 26
*Amaya v. Ballyshear LLC*,
    295 F. Supp. 3d 204 (E.D.N.Y. 2018) .................................................... 32
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 12
*Baumberger Cap. v. Canaan Partners*,
    235 A.D.2d 216, (1st Dept. 1997) ......................................................... 24
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, (2007) ............................................................................... 12
*Bentley, Jr. v. Mobil Gas Station*,
    599 F. App'x. 395 (2d Cir. 2015) ........................................................... 25
*Bowen-Hooks v. City of New York*,
    13 F. Supp. 3d 179 (E.D.N.Y. 2014) ...................................................... 25
*Brennan v. Metropolitan Opera Ass'n, Inc.*,
    192 F.3d 310 (2d Cir. 1999) ................................................................... 26
*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012) ................................................................... 25
*Cadet v. Alliance Nursing Staffing of New York, Inc.*,
    2022 WL 4584246 (S.D.N.Y. 2022) ........................................... 27, 31, 32
*Capstone Bus. Funding, LLC v. Shames Constr. Co., Ltd.*,
    205 A.D.3d 606 (1st Dept. 2022) ........................................................... 22
*Casanas v. Casanas*,
    215 A.D.3d 443, 187 N.Y.S.3d 207 (2023) ........................................... 24
*Clark v. City of New York*,
    2014 WL 4804237 (E.D.N.Y. Sept. 25, 2014) ...................................... 25
*D'Alessandro v. City of New York*,
    713 F. App'x 1 (2d Cir. 2017) ................................................................. 17
*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ................................................................................ 25
*Duarte v. St. Barnabas Hosp.*,
    265 F.Supp. 3d 325 (S.D.N.Y. 2017) ............................................... 13, 14
*Future Star Hosp. Advisors, LLC v. LaFrieda Veal & Lamb Co.*,
    203 A.D.3d 509 (1st Dept. 2022) ........................................................... 23
*Goncalves v. Regent Intl. Hotels*,
    58 N.Y.2d 206 (1st Dept. 1983) ............................................................. 22
*Hallock v. State*,
    64 N.Y.2d 224 (1984) ............................................................................. 20

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993) ..............................................................26, 28

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010)..................................................32

*Kairam v. West Side GI, LLC*,
793 Fed. Appx. 23 (2d Cir. 2019)..........................................12

*La Belle v. Barclays Cap. Inc.*,
2023 WL 2631968 (S.D.N.Y. Mar. 24, 2023) ........................14

*Lerner v. Newmark Co. Real Estate, Inc.*,
178 A.D.3d 418, (1st Dept. 2019)..........................................20

*Loft Rest. Assoc. v. McDonagh*,
209 A.D.2d 482 (2d Dept. 1994) ............................................19

*Ludwig's Drugstore, Inc. v. Forest City Enterprises, Inc.*,
2016 WL 915102 (E.D.N.Y. Mar. 4, 2016) ............................25

*Magnoni v. Smith & Laquercia, LLP*,
701 F. Supp. 2d 497 (S.D.N.Y. 2010) ....................................28

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*,
87 A.D.3d 836 (1st Dept. 2011) .............................................23

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...............................................................25

*Nielsen v. AECOM Technology Corp.*,
762 F.3d 214 (2d Cir. 2014)...................................................14

*Nyamot v. Mount Sinai Hospital*,
2023 WL 4545033, *1 (July 13, 2023) ...................................12

*Patterson v. County of Oneida*,
375 F.3d 206 (2d Cir. 2004)...................................................26

*Pope Contr., Inc. v. New York City Hous. Auth.*,
214 A.D.3d 519 (1st Dep.t 2023)......................................23, 24

*Schroeder v. Pinterest Inc.*,
133 A.D.3d 12 (1st Dept. 2015)..............................................23

*Schwartzreich v. Bauman-Basch*,
231 N.Y. 196 (1921) ..............................................................22

*Swerdloff v. Mobil Oil Corp.*,
74 A.D.2d 258 (1st Dept. 1980)..............................................23

*Thacker v. HSBC Bank USA, N.A.*,
2023 WL 3061336 (S.D.N.Y. Apr. 24, 2023) .............13, 14, 16

*Tierney v. Capricorn Investors, L.P.*,
189 A.D.2d 629 (1st Dept. 1993).............................................19

*Tyler v. City of Kingston*,
720 F.3d 115 (2d Cir. 2013)....................................................12

*Webb-Weber v. Community Action for Human Servs., Inc.*,
23 N.Y.3d 448 (2014) .............................................................16

*Whidbee v. Garzarelli Food Specialties, Inc.*,
223 F.3d 62 (2d Cir. 2000)......................................................26

*Wiggins v Garden City Golf Club*,
2019 WL 6716750 (E.D.N.Y. 2019) .......................................25

iv

*Zheng-Smith v. Nassau Health Care Corporation*,
  486 F.Supp.3d 611 (E.D.N.Y. 2020) ............................................................ 29, 30, 32

Statutes

42 U.S.C § 1981 ........................................................................................................ 25
New York Labor Law § 740 ................................................................................. 13, 14

Rules

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................................... 1

## PRELIMINARY STATEMENT

Defendants Bespoke Real Estate LLC, Bespoke Luxury Marketing LLC, Bespoke Real Estate Florida LLC, (collectively referred to herein as "Bespoke"), Zachary Vichinsky and Cody Vichinsky, by and through their attorneys Milber Makris Plousadis & Seiden, LLP, hereby submit this Brief in support of this motion, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) to dismiss the Amended Complaint (the "Complaint") of Plaintiffs Harlan Goldberg, H Gold LLC (collectively "Goldberg") and Jarret Willis ("Willis") (Goldberg and Willis are collectively referred to herein as "Plaintiffs").

Plaintiffs commenced this lawsuit in pursuit of their efforts to leverage fictitious discrimination and/or retaliation claims in order to recover unearned commissions and payments upon threat of disclosure of fabricated factual allegations against Bespoke.

Bespoke is an ultra-luxury real estate brokerage with a presence in multiple high-end markets, including the Hamptons, New York City, and South Florida.

Goldberg and Willis are former real estate professionals who worked for Bespoke.

Goldberg, an independent contractor of Bespoke who led its Florida operations, helped to negotiate the Waldorf Transaction,[1] involving the purchase of three units at the Waldorf Astoria Residences Miami for clients referred by Willis, another Bespoke agent. Given the nature of the transaction, Bespoke was entitled to gross commissions of $3.1 million, to be divided among various agents and independent contractors based on their agreements with Bespoke. For his role in the Waldorf Transaction, Goldberg requested that Bespoke give him a higher share of the commissions than he was contractually owned. When Goldberg's request was denied, he stopped performing any of his other work obligations and was terminated on September 22, 2022.

---

[1] Capitalized terms not specifically defined herein are defined in the Amended Complaint.

On September 29, 2022, after Goldberg was terminated, Bespoke was contacted for the first time by Goldberg's counsel, Adam Leitman Bailey, Esq., requesting an astounding 60% of the total commissions. Mr. Bailey also sent a letter to non-party PMG Residential, LLC ("PMG") – which owed the commissions to Bespoke – demanding that this money be paid directly to Goldberg, despite the clear prohibition, under Florida law, against paying a real estate salesperson except in the name of and with the express permission of the broker. Those initial communications made no mention of discrimination or retaliation, or of Willis' role in the matter.

It was only when Bespoke refused to capitulate to Goldberg's extortionate demand that Mr. Bailey informed Bespoke's counsel that he intended to pursue discrimination and retaliation claims on behalf of both Goldberg and Willis (who is African American). Thereafter, Mr. Bailey made repeated threats to expose the purported discriminatory conduct of Bespoke and its principals in the media and the courts unless the additional commissions were paid to Goldberg. It quickly became clear that Goldberg, through his counsel, was waging a campaign not to recover legitimate monies that his client was owed,[2] but to hold Bespoke's reputation hostage in order to obtain the extra commissions that Goldberg was previously denied.

In light of the foregoing, all of Goldberg's claims in this lawsuit fall apart. Goldberg has asserted three types of claims: one cause of action for retaliation in violation of New York Labor Law Section 740 – New York's whistleblower statute (hereinafter "Section 740"); three causes of action related to violations of 42 U.S.C. Section 1981 and four causes of action related to alleged payments due for real estate commissions. The gaping deficiencies in Goldberg's pleading, the

_____

[2] PMG has since paid 50% of the commissions on the Waldorf Transaction to Bespoke, as it was required to do, and Bespoke has commensurately paid 50% of the monies owed to both Goldberg and Willis in connection with that transaction. The remaining 50% will be paid to Goldberg and Willis when the remainder of the gross commissions are received by Bespoke.

documentary evidence presented on this motion, and the Statute of Frauds establish that Goldberg failed to plead a cause of action and, accordingly, all seven causes of action must be dismissed.

Willis' claims must be dismissed for failing to allege facts that plausibly establish that he was subjected to discrimination, in any form, under 42 U.S.C. Section 1981. Willis' allegations are no more than a shakedown against a former employer who treated him like family. Willis' fanciful story as detailed in the Amended Complaint are undercut by numerous correspondence from Willis that show he was the individual engaging in offensive language and behavior while expressing immense gratitude for his position with Bespoke. Willis claims he endured discriminatory remarks and disparate treatment because he is African American despite working a long, 6-year tenure with Bespoke, during which, notably, he never complained of discriminatory conduct nor preferential treatment. Of note, Willis was never demoted nor terminated. He was not subjected to any adverse employment action. Additionally, he was not subjected to disparate treatment because of his race. Rather, all employees, including Willis, were subject to the same uniform rules, promulgations, and opportunities of Bespoke's business.

## I. *Goldberg's Claim for Retaliation Must Be Dismissed*

Goldberg's cause of action for violation of Section 740 should be dismissed. Goldberg alleges that he was terminated from Bespoke not because he refused to perform his obligations as an independent contractor, but because he opposed alleged racial discrimination of Willis.

The essential elements of a Section 740 cause of action include: (1) protected disclosure or threatened disclosure to a supervisor; (2) that occurred prior to an adverse action; or (3) a causal connection between an adverse action and the protected disclosure. As set forth herein, Goldberg cannot meet any of these elements.

Documentary evidence, in the form of written communication from Goldberg's counsel to Bespoke, conclusively negates the element of disclosure prior to an adverse action. Specifically, the Complaint alleges, among other things, that Goldberg was terminated because he told his attorney that he had opposed the alleged discriminatory treatment of Willis. But Mr. Bailey's initial contact with Bespoke on behalf of Goldberg – which did not mention Willis or discrimination – was made one week after Goldberg was terminated. Clearly, Goldberg's termination could not have been in retaliation for a complaint that had never been communicated to Bespoke.

The Complaint also fails to allege facts that plausibly establish that Goldberg reasonably believed that Bespoke's alleged actions toward Willis were in any way discriminatory or otherwise unlawful. For instance, the Complaint alleges that one of Bespoke's Florida managers attempted to steal clients from Bespoke. In the world of high-end real estate brokers, this is a common occurrence and certainly not discriminatory or plausibly related to discrimination.

Documentary evidence clearly establishes that Willis did not face race-based discrimination at Bespoke. As reflected by numerous text messages and emails, Willis would repeatedly refer to himself and others using racially charged language, including, but not limited to, use of the "n-word." And, contrary to the Amended Complaint allegations, the word "Jafar" was not a racial epithet used against Willis, but a nickname that Willis gave to himself and frequently used in a positive light. Under these circumstances, no reasonable person could have believed that Willis faced a hostile or otherwise discriminatory work environment.

## II. *Goldberg's Claims for Payment of Commissions Must Be Dismissed*

In the first through fourth causes of action, Goldberg seeks to modify the terms of a written Independent Contract Agreement between Goldberg and Bespoke (the "IC Agreement") pursuant

to alleged oral modifications. The terms of the written IC Agreement provide that it cannot be modified except in writing signed by the parties and it is undisputed that it was not modified in writing. Therefore, Goldberg's claims based upon multiple alleged oral modifications of the IC Agreement are barred by the Statute of Frauds. Thus, the alleged modification for a one-time 60% commission would amount to no more than an unenforceable gratuitous promise. Goldberg also failed to plead facts that establish the alleged one-time increase in compensation was authorized by Bespoke.

Goldberg and Bespoke drafted a written agreement that addressed commissions earned by Goldberg for work performed in Florida (the "Florida Commission Agreement"). Although unsigned, that agreement was performed in accordance with its terms and constitutes documentary evidence of the terms of the agreement between Goldberg and Bespoke.

Documentary evidence establishes commission amounts due and amounts paid to Goldberg. Accordingly, Goldberg's causes of action relating to commission payments must be dismissed.

Goldberg's cause of action for promissory estoppel must be dismissed because Goldberg failed to plead reasonable reliance on the alleged promise or injury caused by detrimental reliance.

Goldberg's causes of action for unjust enrichment and quantum meruit must be dismissed because Goldberg's entitlement to commissions must be based upon an agreement between the parties and a party cannot sue in quasi-contract where an agreement between the parties exists.

III. *Willis' Claims for Hostile Work Environment, Disparate Treatment and Constructive Discharge Under 42 U.S.C. § 1981 Must Be Dismissed*

Willis, whose claims are equally frivolous to Goldberg's, alleges three causes of action against Bespoke: i) he was subjected to a hostile work environment because he is African American in violation of 42 U.S.C. Section 1981 ("Section 1981"); ii)  he was subjected to disparate

treatment because he is African American in violation of Section 1981; and iii) he was subjected to constructive discharge in violation of Section 1981. Willis asserts these claims despite the fact he had maintained a close personal relationship with Bespoke's principals, Zachary Vichinsky ("Z. Vichinsky") and Cody Vichinsky ("C. Vichinsky"), both before and during his work relationship with Bespoke, since 2014.

After nine years of pre-employment friendship, and, later, a professional and personal relationship, which included Willis being a groomsman at C. Vichinsky's wedding, and asking Defendant Z. Vichinsky to be his son's Godfather, Willis brings this frivolous and baseless claim for race discrimination. Willis' family attended social events with the families of both Zach and Cody. Now, Willis claims he was subjected to a hostile work environment so permeated with discriminatory harassment, he was forced to resign his position. However, Willis himself was responsible for fostering the alleged discriminatory conduct. He cannot now claim his personal interpretation and subjective experience of his tenure with Bespoke was so filled with discrimination and harassment when he himself was the initiator of such conduct.

Dismissal is warranted because the pleadings fail to allege any factual circumstances giving rise to a plausible inference of discrimination and the factual record undercuts Willis' unfounded claims. Accordingly, Willis' claims for alleged violations under Section 1981 against Defendants must be dismissed in their entirety.

**IV.** ***Goldberg's Claims for Hostile Work Environment, Disparate Treatment and Retaliation Under 42 U.S.C. § 1981 Must Be Dismissed***

Goldberg's claims for violations of Section 1981 must be dismissed. He alleges he was subjected to a hostile work environment and disparate treatment because he is Jewish. Additionally, he alleges he was subjected to retaliation for allegedly opposing Bespoke's discriminatory practices against Willis.

Goldberg was never subjected to inappropriate conduct rising to a prima facie case of hostile work environment or disparate treatment because he is Jewish. Goldberg does not plead he was subjected to a work environment at Bespoke that was severe and pervasive with hostile and abusive conduct. In fact, he was not subjected to any offensive conduct, either objective or subjective, because he is Jewish, or otherwise. Rather, Goldberg himself initiated and fostered all derogatory language. Indeed, Goldberg's allegations of hostile work environment and disparate treatment are undercut by numerous correspondence from Goldberg that show he was the individual that used offensive language.

Further, for similar reasons to those in support of the dismissal of his Section 740 claim, Goldberg's claim for retaliation under Section 1981 cannot stand. Goldberg failed to plead an actionable retaliation claim because his purported "complaint" about discrimination toward Willis occurred after his departure from Bespoke. Moreover, Goldberg cannot prove he had a "reasonable belief," as noted *supra*, Willis was, in fact, subjected to discrimination based on race.

Accordingly, Goldberg's claims for hostile work environment, disparate treatment and retaliation under Section 1981 must be dismissed in their entirety.

## SUMMARY OF COMPLAINT

A copy of the Amended Complaint is submitted as Exhibit A to the Affirmation of Leonardo D'Alessandro ("D'Alessandro Aff.").

Goldberg has asserted seven causes of action against Bespoke:

   i. Under the first cause of action, Goldberg seeks damages for breach of contract against Goldberg related to real estate sales commissions. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 305-322).
   ii. Under the second cause of action, Goldberg asserts promissory estoppel against Bespoke by Goldberg for certain claimed oral modifications of written agreements. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 323-331).

iii. Under the third cause of action, Goldberg seeks to recover real estate commissions governed by contract under the theory of unjust enrichment. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 332-343).

iv. Under the fourth cause of action, Goldberg seeks to recover real estate commissions governed by contract under the theory of quantum meruit. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 344-355).

v. Under the fifth cause of action, Willis alleges Defendants subjected him to a hostile work environment based on race. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 356-386).

vi. Under the sixth cause of action, Willis alleges he was subject to disparate treatment by Defendants based on race. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 387-415)

vii. Under the seventh cause of action, Willis alleges Bespoke constructively discharged him. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 416-436).

viii. Under the eight cause of action, Goldberg alleges he was subjected to disparate treatment by Defendants because he is Jewish in violation of Section 1981. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 437-461).

ix. Under the ninth cause of action, Goldberg alleges he was subject to disparate treatment by Defendants because he is Jewish in violation of Section 1981. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 462-484).

x. Under the tenth cause of action, Goldberg alleges Bespoke retaliated against him in violation of Section 1981. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 485-511).

xi. Under the eleventh cause of action, Goldberg alleges Bespoke terminated him and denied him commission in retaliation in violation Section 740. (*See* D'Alessandro Aff., Exhibit A at ¶¶ 512-533).

## **STATEMENT OF FACTS CONCERNING GOLDBERG PLAINTIFFS**

Goldberg was terminated on September 22, 2022. *See* Vichinsky Aff., Exhibit A.

Counsel for Goldberg first communicated with Bespoke by letter dated September 29, 2022, one week after Goldberg was terminated. *See* Z. Vichinsky Aff., Exhibit B. Goldberg's counsel does not convey to Bespoke any of Goldberg's allegations of racial or ethnicity-based improper treatment of Willis. *See id.*; *see also* Z. Vichinsky Aff., Exhibit C at 4, ¶ 2.

Documentary evidence establishes that it was Willis who referred to himself as "Jafar" repeatedly. *See* Z. Vichinsky Aff., Exhibit D.

Goldberg's assertion regarding the use of the "n-word" is disingenuous. The only person to regularly use the "n-word" in referring to Willis was Willis himself. *See* Affidavit of Cody Vichinsky ("C. Vichinsky Aff."), Exhibit A.

As to commissions, Goldberg was an independent contractor under the IC Agreement. Z. Vichinsky Aff., Exhibit F at ¶¶ 1, 6(a) & 8. The IC Agreement contains an integrated merger clause that prohibits oral modifications and provides that the contract terms cannot be waived or modified except by express written agreement signed by the party against whom modification is sought. Z. Vichinsky Aff., Exhibit F at ¶¶ 15 &16.

Goldberg's initial duties, term of engagement and compensation were set forth in Exhibit A to the IC Agreement. Z. Vichinsky Aff., Exhibit F at ¶ 3. Goldberg undertook various duties related to real estate sales and transactions. *See* Z. Vichinsky Aff., Exhibit F at Exhibit A at 7-8 – "*Duties*". The IC Agreement provides that it continues until terminated by either party. *See* Z. Vichinsky Aff., Exhibit F at Exhibit A at 8 – "*Terms*". Any modifications to the commission-based schedule or compensation schedule had to be agreed upon in writing by both parties. *See* Z. Vichinsky Aff., Exhibit F at Exhibit A at 9, ¶¶ 7.A & 7.B – "*Term Period For Exhibit B Commission Compensation*".

The IC Agreement does not set forth the terms for Goldberg's compensation for commission on real estate sales or listings in Florida. *See* Z. Vichinsky Aff., Exhibit F at Exhibit B.

Goldberg's commission for Florida transactions is provided by a written document (the "Florida Commission Agreement"). *See* Z. Vichinsky Aff., Exhibit G at Exhibit B.

Goldberg was paid pursuant to the Florida Commission Agreement, as evidenced by commission receipts signed by Goldberg for 8 transactions. *See* Z. Vichinsky Aff., ¶ 33 and Exhibit H.

Goldberg himself informed Bespoke that the Waldorf Transaction was originated by Willis. *See* Z. Vichinsky Aff., ¶ 35 and Z. Vichinsky Aff., Exhibit I.

Mr. Willis, as originator of the Waldorf Transaction, was entitled under his contract to a 35% commission for originating the relationship with the buyer in the Waldorf Transaction. *See* Z. Vichinsky Aff., ¶¶ 39 &40 and Z. Vichinsky Aff., Exhibit J.

Because Bespoke subsequently assigned the client to Goldberg to manage the purchase, under the Florida Commission Agreement, Goldberg was entitled to 35% commission on the balance for the Waldorf Transaction. *See* Z. Vichinsky Aff., ¶¶ 36 & 41 and Z. Vichinsky Aff., Exhibit G. Both Goldberg and Willis were paid commissions on the Waldorf Transaction pursuant to their separate agreements. *See* Z. Vichinsky Aff., ¶ 42 and Z. Vichinsky Aff., Exhibit K.

Goldberg was paid commissions due for Asia Transaction and Parkland Transaction and provided Bespoke with signed receipts for the payments. *See* Z. Vichinsky Aff., ¶¶ 47-50 and Z. Vichinsky Aff., Exhibits L & M.

Goldberg was entitled to commission pursuant to an override provision (the "Override Provision") only for transactions brokered by Bespoke in Florida in which Goldberg did not otherwise earn a commission. *See* Z. Vichinsky Aff., ¶¶ 51-53 and Z. Vichinsky Aff., Exhibit G; D'Alessandro Aff., Exhibit A at ¶¶ 37-43. Documentary evidence establishes that Goldberg earned a commission on every transaction brokered by Bespoke in Florida. *See* Z. Vichinsky Aff. at ¶ 52 and Z. Vichinsky Aff., Exhibit H.

# <u>STATEMENT OF FACT CONCERNING WILLIS</u>

Bespoke maintains a comprehensive employee manual. The manual contains anti-harassment and anti-discrimination policies and a complaint procedure. Willis executed a handbook receipt acknowledgment form. *See* Z. Vichinsky Aff., ¶ 52 and Exhibit N.

Z. Vichinsky and C. Vichinsky were first introduced to Willis in or about 2014, prior to Willis becoming employed by Bespoke. Willis, C. Vichinsky and Z. Vichinsky thereafter developed close friendships. Willis referred to himself as "Jafar" and frequently referenced using his personal charm to "Jafar" people beginning at least as early as 2014. *See* Z. Vichinsky Aff., ¶ 67.

Willis' job description was detailed in an employment agreement. *See* Z. Vichinsky Aff., ¶ 53 and Exhibit O. Willis earned a base salary of $75,000, and he earned commissions pursuant to an employment agreement with Bespoke. *See* Z. Vichinsky Aff., ¶ 53. Since Willis' duties required him to simply use his network to procure clients, he did not require a physical desk at Bespoke's office. *See* Z. Vichinsky Aff., ¶ 62, Exhibit J ¶ 2 of Exhibit A of Employment Agreement.

Documentary evidence establishes that it was Willis who first referred to himself as "Jafar" repeatedly. *See* Z. Vichinsky Aff., Exhibit P.

Willis' allegations regarding the use of the "n-word" is disingenuous. The only person to regularly use the "n-word" in referring to Willis was Willis himself. *See* C. Vichinsky Aff., Exhibit A. Willis considered racial humor to be the best humor. *See* C. Vichinsky Aff., Exhibit B.

Willis also developed a close friendship with Lisa Kling ("Kling"), executive assistant to C. Vichinsky, during his tenure. Similar to Willis' relationship with Z. Vichinsky and C. Vichinsky, he also initiated racially derogatory language with Kling. *See* Z. Vichinsky Aff., ¶¶ 55-56., Exhibit Q.

11

Willis suddenly and unexpectedly resigned his position on December 14, 2022. *See* Z. Vichinsky Aff., ¶¶57-58., Exhibit R.

## ARGUMENT

### POINT I

### LEGAL STANDARD FOR A MOTION TO DISMISS

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tyler v. City of Kingston*, 720 F.3d 115, 119 (2d Cir. 2013)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007))). While a Court must assume the facts plead are true, the Court must then proceed to determine whether the pleaded facts plausibly give rise to entitlement to relief. *See Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal emendations and quotation marks omitted).

To survive a motion to dismiss, a plaintiff must plead facts that go beyond mere possibility of entitlement to relief - only a complaint that states a *plausible* claim for relief survives a motion to dismiss. *Id.* A discrimination plaintiff must plead facts that allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Kairam v. West Side GI, LLC*, 793 Fed. Appx. 23, 25 (2d Cir. 2019). A plaintiff that asserts claims for employment discrimination unsupported by direct evidence must plausibly allege each element of the cause of action. *See Nyamot v. Mount Sinai Hospital*, 2023 WL 4545033, *1 (July 13, 2023).

Applying the foregoing principles, the Complaint must be dismissed based on Plaintiffs' failure to plausibly allege the causes of action and based upon documents conclusively disproving Plaintiffs' claims.

## POINT II

### GOLDBERG FAILED TO STATE A PLAUSIBLE CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW SECTION 740

Goldberg's cause of action for violation of Section 740 fails to state a claim because the Complaint fails to provide the necessary factual basis to support a plausible the cause of action.

Section 740 was amended effective January 26, 2022. Under the amendments, to state a cause of action for violation of Section 740, "a plaintiff must first allege that she disclosed or threatened to disclose to a supervisor an activity, policy, or practice of the employer that the employee at least reasonably believed was illegal." *See Thacker v. HSBC Bank USA, N.A.*, 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023) (citing *New York Labor Law* § 740(2)). "The plaintiff must then point to a retaliatory, adverse action taken by the employer in response to that complaint." *Id.*; *see New York Labor Law* § 740(1)(e). "As a result, for an employer to run afoul of the whistleblower statute, the adverse action must have been taken 'because' the employee engaged in protected activity." *Id.* (*citing Duarte v. St. Barnabas Hosp.*, 265 F.Supp. 3d 325, 354 (S.D.N.Y. 2017)); *see New York Labor Law* § 740 (2)(a).

In addition, Goldberg failed to plead any facts that render plausible his claim that his termination was in retaliation for disclosure of any improper behavior of which Bespoke was aware.

**A.** ***The Complaint Fails to State a Cause Of Action for Violation of Section 740 Based Upon the Alleged Hasson Client Interference Disclosure.***

The sole disclosure that Golberg alleges he personally and directly relayed to supervisors was the alleged Hasson Client Interference. *See* D'Alessandro Aff., Exhibit A at ¶ 248. Goldberg failed to plead in the Complaint (including its exhibits and referenced discrimination pleadings) when the disclosure occurred or that it occurred within temporal proximity of an adverse action. Like any whistleblower or retaliation claim, timing is an essential element to state a cause of action. As such, Goldberg failed to plausibly allege that any alleged adverse action occurred "because" he engaged in protected activity in disclosing Mr. Hasson's actions. *See Thacker*, 2023 WL 3061336, at *6 (citing *Duarte*, 265 F.Supp. 3d at 354); *see also New York Labor Law* § 740(2)(a).

In addition, the Hasson Client Interference does not constitute "an activity, policy, or practice of the employer" and thus cannot form the basis of a Section 740 cause of action. Mr. Hasson was an employee of Bespoke Florida, not Goldberg's employer or supervisor. *See* D'Alessandro Aff., Exhibit A at ¶ 232. Hasson's actions are not alleged to be Bespoke activity, Bespoke policy or Bespoke practice. *See* D'Alessandro Aff., Exhibit A at ¶ 242-252. Goldberg pleads mere interference by one, lone Bespoke employee.

Goldberg failed to plead facts establishing "reasonable belief" required to state a cause of action for violation of Section 740. Whether a belief is "reasonable" contains both subjective and objective components. *See La Belle v. Barclays Cap. Inc.*, No. 19-CV-3800 (JPO), 2023 WL 2631968, at *10 (S.D.N.Y. Mar. 24, 2023). That is, "a plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." *Id.* at *10 (*citing Nielsen v. AECOM Technology Corp.*, 762 F.3d 214, 221 (2d Cir. 2014)). When examining the context of the

complained-of conduct, any reasonable person would not perceive the alleged Hasson Client Interference constituted unlawful discrimination.

Goldberg cannot demonstrate that he had a subjective belief, which was objectively reasonable, that Bespoke violated a law, rule, or regulation when a white employee, allegedly sought to steal the clients of an African American employee in the real estate business. Objectively, attempting to steal co-workers' clients is not an unusual occurrence in any business or industry. Goldberg could not have held a reasonable belief that a real estate industry employee soliciting another employee's clients constitutes race-based unlawful discrimination.

**B.** ***The Complaint Fails to State a Cause of Action for Violation of Section 740 Based Upon the Alleged Willis Criticism, Alleged Selling Restriction, Alleged Insults and Alleged Unwarranted Reassignment Disclosure Via Counsel.***

Goldberg admits he did not personally or directly disclose the Alleged Willis Criticism, Alleged Selling Restriction, Alleged Insults and Alleged Unwarranted Reassignment to any supervisor of the Bespoke Entities. *See* D'Alessandro Aff., Exhibit A at ¶ 261 A plain reading of the Complaint demonstrates that Goldberg does not have personal or even plausible knowledge that those concerns were relayed to Bespoke supervisors before his termination.

Goldberg claims he relayed his concerns to his own counsel in August 2022 (the "August 2022 Disclosure"). *See* D'Alessandro Aff., Exhibit A at ¶ 261; Z. Vichinsky Aff. at ¶¶ 9-10, Exhibit B. Fatal to Goldberg's claim is the fact that while he alleges his counsel disclosed these concerns to counsel for Bespoke, the claims were not conveyed *before* Goldberg's termination on September 22, 2022. Z. Vichinsky Aff. at ¶¶ 9-10, Exhibit B . There was no "August 2022 Disclosure" through counsel since Bespoke was unrepresented in this matter until after Goldberg's counsel forwarded the September 29, 2022 demand letter to Bespoke. Z. Vichinsky Aff. at ¶¶ 9-10, Exhibit B.  This

failure in pleading prevents Goldberg from plausibly pleading that his termination occurred in response to a prior protected disclosure.

New York Courts have held that notice of an alleged complaint or protected activity is required to state a plausible Section 740 cause of action. *Thacker*, 2023 WL 3061336, at *6 (*citing Webb-Weber v. Community Action for Human Servs., Inc.*, 23 N.Y.3d 448 (2014)). Goldberg's failure to plausibly plead that Bespoke received notice of an alleged protected activity prior to Goldberg's termination warrants dismissal because the August 2022 Disclosure merely alleges that his counsel communicated with attorneys who were not involved until after the September 29, 2022 letter was received by Bespoke.

Dismissal is also warranted based upon the irrefutable documentary evidence. Bespoke and its counsel first received correspondence from Goldberg's counsel on September 29, 2022, approximately a week after Goldberg's termination. *See* Z. Vichinsky Aff., Exhibit B. The September 29, 2022 letter to Bespoke only introduces Goldberg's counsel as representing Goldberg in a commissions dispute. *Id.* The letter was addressed directly to Bespoke, not to its attorneys. *Id.* In addition, the letter is devoid of allegations of discrimination against Willis or any of the discrimination alleged in the Complaint. *Id.* Since communications or disclosures between counsel would not have occurred after September 29, 2022, Goldberg's termination on September 22, 2022 could not have been in response to any alleged disclosure. *Compare* D'Alessandro Aff., Exhibit A at ¶ 263 *with* Z. Vichinsky Aff. Exhibit B. Indeed, if Goldberg's attorneys had communicated with Bespoke's attorneys prior to September 29, 2022, addressing that letter directly to Bespoke counsel would have violated professional conduct rules.

Nor is the pleading of discriminatory behavior plausible because Goldberg, as the President of Bespoke Florida, supervised Willis during the period of time he was allegedly working at

Bespoke's Florida offices. *See* D'Alessandro Aff., Exhibit A, ¶¶ 33 & 75. If Goldberg "reasonably" believed that Willis was facing unlawful discrimination, then he would have had an obligation to remedy that discrimination while he remained in a supervisory position, and not simply to relay a complaint to his attorney that would not reach Bespoke until after he was terminated. Thus, Goldberg's pleading contains an implicit self-recrimination that renders his Section 740 claim subject to dismissal as a matter of law.

Finally, documentary evidence clearly demonstrates that Goldberg could not have reasonably believed Willis was subjected to discrimination by Bespoke in light of Willis' regular, offensive communications identifying himself as the "n-word" and calling himself "Jafar." *See* C. Vichinsky Aff., Exhibit A and Z. Vichinsky Aff., Exhibit J. Indeed, Willis considers racial humor "the best humor." *See* C. Vichinsky Aff., Exhibit B.

## C. *The Complaint Fails to State a Cause of Action for Violations of Section 740 Based Upon Alleged Denial of Commissions.*

Goldberg alleges "upon information and belief" that Bespoke denied Goldberg commissions because of 1) the undated disclosure of the Hasson Client Interference; and 2) the alleged disclosure, to his own attorneys, of the Alleged Willis Criticism, Alleged Selling Restriction, Alleged Insults and Alleged Unwarranted Reassignment claims. *See* D'Alessandro Aff., Exhibit A at ¶ 525.

A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements "upon information and belief" without explaining the basis for the belief. *See D'Alessandro v. City of New York*, 713 F. App'x 1, 6–7 (2d Cir. 2017). Although Goldberg asserts that Bespoke's actions were motivated by the alleged disclosures, Goldberg does not provide any factual support of that claim, other than alleging "upon information and belief" Goldberg was denied commissions because of the alleged August 2022 Disclosure.

Yet, Goldberg does not identify any commission payment was denied because of the August 2022 Disclosure. Rather, the dispute is over the amount of commissions due. *See* Z. Vichinsky Aff., Exhibit B.

Goldberg's pleaded allegations amount to mere legal conclusions and do not suffice to establish the required pleading of an adverse action as a result or because of protected activity. This deficiency alleged 'upon information and belief', demonstrates Goldberg cannot establish the causation necessary to state a plausible claim for violation of Section 740.

Finally, the conduct Goldberg claims Bespoke engaged in after the alleged August 2022 Disclosure with respect to commissions is no different than the conduct, he alleges Bespoke engaged in prior to the alleged August 2022 Disclosure. Goldberg alleges he was being denied commissions before the alleged August 2022 Disclosure because he had already retained counsel "in an attempt to recover commissions that the Bespoke entities owed to him . . . ." *See* D'Alessandro Aff., Exhibit A at ¶ 261. Of note, Bespoke was not aware Goldberg had retained counsel until a week after he was terminated. To the extent Goldberg alleges denial of commissions because of the alleged August 2022 Disclosure his claim fails since Goldberg is essentially alleging he was denied the same commissions by Bespoke both before and after the alleged August 2022 Disclosure. *Id.*

### POINT III

### GOLBERG'S CAUSE OF ACTION FOR BREACH OF CONTRACT RELATING TO THE WALDORF TRANSACTION MUST BE DISMISSED FOR FAILURE TO PLEAD A PLAUSIBLE CLAIM

Goldberg's allegations as to entitlement to 60% commission on the Waldorf Transaction and to Overrid Commissions based upon oral modifications to the written IC Agreement are conclusively disproven by documentary evidence and the statute of frauds. The amount Goldberg

was due and proof payment of Goldberg's commission are conclusively established by documentary evidence.

Goldberg pleads and submits the IC Agreement between Goldberg and Bespoke. *See* D'Alessandro Aff., Exhibit A at ¶ 29 and Exhibit 1 and Z. Vichinsky Aff., Exhibit F. Goldberg pleads that Florida transactions are not covered by the IC Agreement and that therefore Florida transactions are subject to a new oral agreement. *See* D'Alessandro Aff., Exhibit A at ¶ 41. Goldberg alleges that his entitlement to payment of commission constituted an oral modification of the IC Agreement. These allegations are conclusively disproven by the terms of the IC Agreement and the Statute of Frauds.

Under the Statute of Frauds, a written agreement that provides that it cannot be changed orally cannot be changed, as a matter of law, except by a writing signed by the party against whom enforcement of the change is sought. *New York Gen. Obl. Law* § 15-301, subd.1. An alleged oral modification is unenforceable to modify the terms of a contract that provides it can only be changed by a signed writing. *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 631 (1st Dept. 1993).

Goldberg alleges that the IC Agreement was modified by actions but not in writing. *See* D'Alessandro Aff., Exhibit A at ¶ 38. The IC Agreement provides that it cannot be modified except by written agreement signed by the party against whom waiver or modification is sought. Z. Vichinsky Aff., Exhibit F at ¶ 15. Therefore, the IC Agreement constitutes documentary evidence that conclusively disproves Goldberg's allegation that the IC Agreement was modified.

Because Goldberg's alleged IC Agreement modifications are not contained in any writing signed by Bespoke, nor was any consideration provided, the modifications are unenforceable. *See Loft Rest. Assoc. v. McDonagh*, 209 A.D.2d 482, 483 (2d Dept. 1994).

In the event the Court believes that there is a question of fact regarding an oral modification for commissions in Florida, Goldberg also failed to plead facts that establish "Kayt Gray" had authority to bind Bespoke to the alleged increased 60% commission. Goldberg alleges Ms. Gray agreed to pay 60% commission to Goldberg on the Waldorf Transaction. See D'Alessandro Aff., Exhibit A at ¶¶ 202 & 203. Goldberg does not allege facts that establish he plausibly believed Ms. Gray was authorized to revise his commission structure on behalf of Bespoke. Ms. Gray did not execute the IC Agreement on behalf of Bespoke. *See* Z. Vichinsky Aff., Exhibit F.

Therefore, Goldberg failed to plead facts that plausibly establish Ms. Gray had the authority to bind Bespoke to the unusual and extraordinary one-time grant of compensation in excess of the Florida Commission Agreement or the alleged initial oral modification of the IC Agreement between Bespoke and Goldberg.

Nor did Goldberg plead facts that would establish Ms. Gray had apparent authority to bind Bespoke. Apparent authority is created by words or conduct of the principal communicated directly to the third party that give rise to the appearance and belief that the agent possesses authority to enter into the transaction. *See Hallock v. State*, 64 N.Y.2d 224, 231 (1984). "[T]he existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent." *Id.*

Goldberg failed to plead that Z. Vichinsky or any principal of Bespoke disclosed to Goldberg by word or act that Ms. Gray was authorized to bind Bespoke to the 60% commission for the Waldorf Transaction.

Further, the Florida Commission Agreement constitutes documentary evidence of a separate written agreement that provides the terms of Goldberg's entitlement to commission

payments in Florida. *See* Z. Vichinsky Aff., Exhibit G. Although unsigned, an unsigned agreement is enforceable where the parties' actions establish an intent to be bound. *See Lerner v. Newmark Co. Real Estate, Inc.*, 178 A.D.3d 418, (1st Dept. 2019).

Goldberg's pleadings establish that he performed in accordance with the Florida Commission Agreement. *See* D'Alessandro Aff., Exhibit A. Documentary evidence establishes the parties' intent to be bound - Goldberg acknowledged Bespoke payments pursuant to the Florida Commission Agreement on 8 separate transactions. Z. Vichinsky Aff., Exhibit C. Therefore, the pleadings and documentary evidence establish the parties' intention to be bound by the Florida Commission Agreement.

The Florida Commission Agreement establishes that Goldberg is only entitled to 35% commission on transactions assigned to Goldberg by Bespoke, net of the referral fee. Z. Vichinsky Aff., Exhibit G at Exhibit B – "*Buyer Services Commission Compensation Mechanics*" at a, first bullet point (PDF p. 5).

Documentary evidence establishes Goldberg designated Willis as the procurer of the client on the Waldorf Transaction. *See* Z. Vichinsky Aff., Exhibit I. Therefore, Goldberg's allegation that he procured the purchaser in the Waldorf Transaction is conclusively disproven by party admission from Goldberg. *Compare* D'Alessandro Aff., Exhibit A at ¶¶ 200 & 314 *with* Z. Vichinsky Aff., Exhibit I.

Because Goldberg was assigned the Waldorf Transaction procured by Bespoke through Willis, documentary evidence establishes that Willis is entitled to 35% commission under his contract as procurer of the purchaser of the Waldorf Transaction. Z. Vichinsky Aff., Exhibit J at Exhibit B – "*Commission Compensation Mechanics*" at ¶ 2.B. Goldberg is entitled to 35% commission on the remaining for the Waldorf Transaction under the Florida Commission

Agreement for working on a transaction assigned to him by Bespoke. *See* Z. Vichinsky Aff., Exhibit G at Exhibit B – "*Buyer Services Commission Compensation Mechanics*" at ¶ a, first bullet (PDF page 5).

Documentary evidence establishes that Goldberg was paid for the Waldorf Transaction pursuant to the Florida Commission Agreement. Z. Vichinsky Aff., Exhibit K.

Finally, Goldberg's claim to entitlement of 60% commission under the Waldorf Transaction must be dismissed under a different Statute of Frauds. Goldberg had the obligation to perform the Waldorf Transaction at the time of the alleged promise and Goldberg does not allege any additional consideration was provided for the modified compensation. "Any change in an existing contract, such as a modification of the rate of compensation, or a supplemental agreement, must have a new consideration to support it." *Schwartzreich v. Bauman-Basch*, 231 N.Y. 196, 203 (1921). "'[A] promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract.'" *Capstone Bus. Funding, LLC v. Shames Constr. Co., Ltd.*, 205 A.D.3d 606, 607 (1st Dept. 2022)(quoting *Goncalves v. Regent Intl. Hotels,* 58 N.Y.2d 206, 220 (1st Dept. 1983)). Accordingly, Goldberg failed to plead any consideration that would render the alleged 60% modification to the existing agreement enforceable.

## POINT IV

### GOLDBERG'S CAUSES OF ACTION FOR BREACH OF CONTRACT RELATING TO THE ASIA TRANSACTION, PARKLAND TRANSACTION AND <u>OVERRIDE PROVISION MUST BE DISMISSED</u>

Goldberg seeks to recover commissions for the Asia Transaction, the Parkland Transaction and the Override Provision. Documentary evidence conclusively disproves the pleaded allegations.

Documentary evidence establishes that Goldberg was paid for the Asia Transaction and

provided a written receipt to Bespoke for the payment. *See* Z. Vichinsky Aff., Exhibit L.

Documentary evidence establishes that Goldberg was recently paid for the Parkland Transaction. *See* Z. Vichinsky Aff., Exhibit M.

The Florida Commission Agreement establishes that Goldberg was entitled to payment on the Override Provision on transactions where he was not otherwise entitled to commission. *See* Z. Vichinsky Aff., Exhibit G at Exhibit B (PDF pages 4 & 5). Documentary evidence establishes Goldberg was paid commission on every transaction in Florida. *See* Z. Vichinsky Aff., Exhibit H. Goldberg is therefore not entitled to any payment under the Override Provision.

### POINT V

### GOLDBERG'S CAUSE OF ACTION BASED ON PROMISSORY ESTOPPEL MUST BE DISMISSED

"The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 841–42 (1st Dept. 2011).

"The existence of a contract between the parties precludes a claim for promissory estoppel." *See Pope Contr., Inc. v. New York City Hous. Auth.*, 214 A.D.3d 519 (1st Dep.t 2023). Goldberg pleads a contract. *See* D'Alessandro Aff., Exhibit A. Therefore, Goldberg failed to plead a cause of action for promissory estoppel.

Goldberg also failed to plead detrimental reliance. To plead estoppel, a party must plead facts that show detrimental reliance by doing or refraining from doing something to sufficiently plead promissory estoppel. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 32 (1st Dept. 2015);. Goldberg does not allege that Bespoke offered the 60% commission to retain him in his position. *See* D'Alessandro Aff., Exhibit A at ¶¶ 200-203. Because Goldberg does not allege Bespoke

offered the 60% commission to induce him to remain with Bespoke, the allegation cannot be a promise upon which estoppel can be maintained. Foregoing other job opportunities does not permit a party to invoke promissory estoppel. *See Swerdloff v. Mobil Oil Corp.*, 74 A.D.2d 258, 263 (1st Dept. 1980).

Further, a claim that is barred by the Statute of Frauds cannot be circumvented by alleging promissory estoppel. *See Future Star Hosp. Advisors, LLC v. LaFrieda Veal & Lamb Co.*, 203 A.D.3d 509, 510 (1st Dept. 2022).

Finally, Goldberg failed to plead any damages arising from the alleged promise. The only alleged damages are the same as the promise – the 60% alleged commission. Goldberg failed to allege any acts or omission from acting that caused damage based on his reliance.

Goldberg's claims for promissory estoppel regarding the Override Provision must be dismissed because documentary evidence establishes Goldberg was paid commission on every transaction in Florida and is therefore not entitled to any payment under the Override Provision. *See* Z. Vichinsky Aff., Exhibit H.

### POINT VI

### GOLDBERG'S CAUSES OF ACTION FOR UNJUST ENRICHMENT AND QUANTUM MERUIT MUST BE DISMISSED BASED UPON <u>THE EXISTENCE OF AN AGREEMENT</u>

The existence of an agreement precludes claims for unjust enrichment and quantum meruit. *Baumberger Cap. v. Canaan Partners*, 235 A.D.2d 216, (1st Dept. 1997); *Pope Contracting*, 214 A.D.3d at 521. A claim that necessarily requires a predicate agreement under which a plaintiff would be entitled to payment forecloses claims in quasi-contract. *See Casanas v. Casanas*, 215 A.D.3d 443, 444, 187 N.Y.S.3d 207, 209 (2023)(unjust enrichment).

The dispute between Bespoke and Goldberg relates only to the terms of their commission agreement and performance of the terms, not the existence of an agreement. Because neither party denies that Goldberg and Bespoke had an agreement that provided the terms of his commissions due, Goldberg cannot sue in quasi-contract and his claims for unjust enrichment and quantum meruit must be dismissed.

## POINT VII

## WILLIS AND GOLDBERG FAIL TO STATE PLAUSIBLE CAUSES OF ACTION FOR VIOLATION OF 42 U.S.C. § 1981

Section 1981 safeguards an individual's right to "make and enforce contracts" from racial discrimination. 42 U.S.C. § 1981. To fall within its scope of protection, a plaintiff must show that the defendant impeded one of plaintiff's contractual rights, which include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C § 1981(b); *see Clark v. City of New York,* No. 13-CV-210, 2014 WL 4804237, at *2 (E.D.N.Y. Sept. 25, 2014). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

To maintain a Section 1981 claim, a plaintiff must establish "(1) [that he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute.'" *Ludwig's Drugstore, Inc. v. Forest City Enterprises, Inc.*, No. 13-CV-6045, 2016 WL 915102, at *12 (E.D.N.Y. Mar. 4, 2016) (quoting *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x. 395, 396 (2d Cir. 2015) (citation omitted)).

Defendants do not dispute that Willis is a member of a racial minority. Rather, Defendants contend Willis was not subjected to discrimination or a hostile work environment because of his race. *Wiggins v Garden City Golf Club*, 2019 WL 6716750 at *3-4 (E.D.N.Y. 2019).

Claims of discrimination under Section 1981 are analyzed using the *McDonnell Douglas* burden-shifting framework. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *Id*. To establish a prima facie case of discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he has suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Id*. (*quoting Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)).

Hostile work environment claims under Section 1981 are analyzed using the same standards used in Title VII cases. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). As under Title VII, a hostile work environment is established under Section 1981 when the workplace is "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). "Isolated, minor acts or occasional episodes do not warrant relief ... a plaintiff must still prove that the incidents were 'sufficiently continuous and concerted' to be considered pervasive, or that a single episode is 'severe enough' to establish a hostile working environment." *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (internal citations omitted). In evaluating a hostile work environment claim, the court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (quoting *Harris*, 510 U.S. at 23).

A work environment will be considered hostile if "a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Brennan*, 192 F.3d at 318 (citation omitted). Finally, it is "axiomatic that in order to establish a [race-based] hostile work environment under [Section 1981], a plaintiff must demonstrate that the conduct occurred because of [his]" protected status. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

### A. Willis Fails to Establish a Prima Facie Case of Hostile Work Environment and Constructive Discharge Under Section 1981 on the Theory Defendants Made His Working Conditions So Intolerable He Was Forced Into an Involuntary Resignation

Willis alleges he was subjected to a hostile work environment based on race in violation of Section 1981. To state an actionable claim for hostile work environment under Section 1981, a plaintiff must show "that the complained-of conduct: 1) is objectively severe or pervasive; 2) creates an environment that the plaintiff himself subjectively perceives as hostile or abusive; and 3) creates such an environment because of the plaintiff's race." *Cadet v. Alliance Nursing Staffing of New York, Inc.,* 2022 WL 4584246, *16 (S.D.N.Y. 2022). A plaintiff must establish the workplace was permeated with "intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. Courts, when evaluating whether a plaintiff suffered a hostile work environment, consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Notwithstanding Willis' failure to bring an actionable claim, his allegations of hostile work environment are nullified by his own conduct which is captured in numerous text messages and

emails created and sent by Willis himself over the course of his 6-year tenure. *See* Z. Vichinsky Aff., ¶ 54 and Exhibit P. For instance, Willis was widely known to refer to himself as "Jafar," an antagonist character in the Disney movie Aladdin. *See* Z. Vichinsky Aff., ¶ 57 and Exhibit P. He routinely sent Z. Vichinsky and C. Vichinsky messages remarking to the effect he would "Jafar" clients of Bespoke, alluding he would attempt to manipulate them. *See* Z. Vichinsky Aff., ¶ 54 and Exhibit P. Additionally, Willis sent many messages to both Z. Vichinsky and C. Vichinsky expressing his love and gratitude for them; for instance, emailing Zach and Cody "I could not be more proud of you two… you are two of my closest friends… I love you both." *See* Z. Vichinsky Aff., ¶ 54 and Exhibit P. The factual record also clearly conveys Willis, and no one else, used racially offensive language in referring not only to himself, but to clients of Bespoke; for example, texting "[h]e will listen to me if you need me to Jafar that SAND NIGGA ass." *See* Z. Vichinsky Aff., ¶ 54 and Exhibit P.

Willis' interactions with Z. Vichinsky and C. Vichinsky is similar to his relationship with Kling. Willis and Kling were frequently together, either at Bespoke headquarters or outside the workplace, and left the office together to get ice cream and coffee. *See* Z. Vichinsky Aff., ¶ 56.

Willis and Kling also corresponded regularly via text message and Instagram. *See* Z. Vichinsky Aff., ¶ 55-56 and Exhibit Q. Willis was known by colleagues to refer to Kling as his "work wife." *See* Z. Vichinsky Aff., ¶¶ 58-59 and Exhibit Q . Willis also initiated racially derogatory language with Kling. *See* Z. Vichinsky Aff., ¶¶ 56 and Exhibit Q .

Willis' hostile work environment allegations, when considered in the totality of the circumstances, amount to little more than a baseless claim brought by a jaded former employee who maintained a close friendship with his former employers and only left his position because he became disillusioned for reasons still unbeknownst to Defendants. Any reasonable person would

conclude that, based on the overwhelming documentation submitted with this motion, Willis himself initiated, created and fostered all derogatory language. For Willis to now claim that he is the victim of discrimination, based on his own actions, is both fanciful and disingenuous, at best, and frivolous and deceitful, at worst. *See, e.g.*, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993) ("If the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."); *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505 (S.D.N.Y. 2010) (holding that "behavior is not actionable" under the more stringent standard of the New York City Human Rights Law "if, in view of plaintiff's own experience and interpretation, [the conduct is] nothing more than petty slights or trivial inconveniences"), *aff'd*, 483 F. App'x 613 (2d Cir. 2012).

For the same reasons, Willis' constructive discharge claim must be dismissed. First, Willis was not subjected to any substandard working conditions. Any reasonable person would conclude Willis himself initiated, created and fostered all derogatory language with Bespoke. *See* Z. Vichinsky Aff., ¶ 54. Willis was considered not just a friend of Bespoke's principals, but family; Willis himself professed his love for the two on numerous occasions. *See* Z. Vichinsky Aff., ¶ 54. Willis cannot now claim that his own experience and interpretation of his work environment was so hostile it forced him to resign when, in actuality, he maintained an intimate friendship with Z. Vichinsky and C. Vichinsky. Again, for Willis to now claim that he is the victim of discrimination, based on his own actions, is both fanciful and disingenuous, at best, and frivolous and deceitful, at worst.

Accordingly, Willis' claims for a hostile work environment based on race and constructive discharge in violation of Section 1981 must be dismissed in their entirety.

**B.** *Willis Fails to Establish a Prima Facie Case of Disparate Treatment Under Section 1981 Based on the Theory He Was Subjected to a "Discriminatory Selling Restriction," "Client Interference," "Discriminatory Demotion" and "Systematic Commissions Nonpayment"*

Willis' cause of action for disparate treatment is both unfounded and not actionable. Willis was not subjected to disadvantageous terms and conditions of employment because of his race. Rather, he was subject to the same rule and promulgations as every other employee of Bespoke.

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Zheng-Smith v. Nassau Health Care Corporation,* 486 F.Supp.3d 611, *622 (E.D.N.Y. 2020) (internal citations omitted). To establish disparate treatment, there must be a reasonably close resemblance of the facts and circumstances of a plaintiff's and a comparator's cases, such that the comparator "must be similarly situated to the plaintiff in all material respects." *Id.*

Willis cannot establish he was treated less favorably than a similarly situated employee outside his protected group. Indeed, the documentation shows he was treated no differently than any other employee of Bespoke. Willis was afforded all of the same opportunities and benefits as every other employee, and he was subjected to the same rules and policies. *See* Z. Vichinsky Aff., ¶¶ 60-65. Willis baselessly alleges he was denied certain duties. These allegations are directly contradicted by his employment agreement which defined the scope of his employment. *See* Z. Vichinsky Aff., ¶ 61 and Exhibit O.  Additionally, he alleges he was denied other opportunities, such as tickets to the Hampton Classic, which are not only false, but also do not rise to the level of an actionable claim of discrimination. *See* Z. Vichinsky Aff., ¶ 64. He further claims he suffered from "client interference," a "discrimination demotion," and "systematic commissions nonpayment." *See* D'Alessandro Aff., Exhibit A at ¶¶ 392-404 These contrived allegations are

contradicted by Willis' clearly defined role with Bespoke; that of a real estate salesperson whose responsibilities required him to simply procure referrals and identify residents seeking to buy or sell properties, not to showcase the properties or otherwise close transactions. *See* Z. Vichinsky Aff., ¶ 61. Moreover, as detailed herein, Willis' claim he is owed certain commissions is misleading and unfounded. *See* Z. Vichinsky Aff., ¶ 65. Willis' disparate treatment claims represent the gripes of a jaded former employee more so than an aggrieved individual. As such, his claim for race discrimination based on disparate treatment under Section 1981much be dismissed in its entirety.

**C. *Goldberg Fails to Establish a Prima Facie Case of Hostile Work Environment Under Section 1981***

Goldberg alleges he was subjected to a hostile work environment based on his Jewish race in violation of Section 1981. To state an actionable claim for hostile work environment under Section 1981, Goldberg must also show that the conduct he alleges: 1) is objectively severe or pervasive; 2) creates an environment that the plaintiff himself subjectively perceives as hostile or abusive; and 3) creates such an environment because of the plaintiff's race." *Cadet,* 2022 WL 4584246, *16 (S.D.N.Y. 2022).

Goldberg cannot establish a *prima facie* case of hostile work environment under Section 1981. Goldberg used offensive language and conduct concerning Jewish people. *See* Z. Vichinsky Aff., ¶ 67. Indeed, Goldberg, on numerous occasions, used disparaging and derogatory language when referring to individuals who are Jewish and also other members of protected classes. *See* Z. Vichinsky Aff., ¶67-681. Any reasonable person would conclude that, based on the overwhelming documentation noted above, Goldberg himself initiated, created and fostered derogatory language with Bespoke. *See* Z. Vichinsky Aff., ¶ ¶ 67-70 and Exhibit S. Additionally, no reasonable person would find that Goldberg, the very person who initiated the derogatory language, subjectively

perceived his work environment as hostile or abusive. Goldberg's unabashed attempt to parlay his own indecent conduct into the instant lawsuit is not only shameless, but unactionable.

Accordingly, Goldberg's claim for hostile work environment under Section 1981 must be dismissed in its entirety.

## D. *Goldberg Fails to Establish a Prima Facie Case of Disparate Treatment Under Section 1981*

Goldberg was not subjected to disadvantageous terms and conditions of employment because of his race. Rather, the terms and conditions of Goldberg's employment were conducted in accordance with his employment agreements. Goldberg cannot meet the standard for disparate treatment: that Bespoke treated Goldberg less favorably than a similarly situated employee outside his protected group. *Zheng-Smith,* 486 F.Supp.3d 611 (E.D.N.Y. 2020) (internal citations omitted). Indeed, the factual record is clear: Goldberg received payment for all commissions earned in accordance with the agreements. *See* Z. Vichinsky Aff., ¶¶ 27, 37, 43, 48 & 50 and Exhibits G & H.

## E. *Goldberg Fails to Establish a Prima Facie Case of Retaliation Under Section 1981*

Retaliation claims under Section 1981 are evaluated under a three-step burden-shifting analysis. *Cadet,* 2022 WL 4584246, *222 (S.D.N.Y. 2022) (*citing Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)) (internal citations omitted). To survive a motion to dismiss on a Section 1981 retaliation claim, "a plaintiff must present evidence that shows '[i] participation in a protected activity; [ii] that the defendant knew of the protected activity; [iii] an adverse employment action; and [iv] a causal connection between the protected activity and the adverse employment action.'" *Id.* at *222 (internal quotations omitted); *see Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018). As with other claims subject to the burden-shifting framework, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that

arise under [the burden shifting analysis]." *Id.* In other words, "for a retaliation claim to survive ... a motion to dismiss, the plaintiff must plausibly allege that: i) defendants discriminated — or took an adverse employment action — against [him], ii) 'because' [he] has opposed any unlawful employment practice." *Id.* "'[A] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" *Id.* at 223 (internal quotations omitted).

Goldberg claims he relayed the concerns to his own counsel in August 2022 (the "August 2022 Disclosure"). *See* D'Alessandro Aff., Exhibit A at ¶ 262. Fatal to Goldberg's Section 1981 retaliation claim – as with his Section 740 claim – is the fact that while he alleges his counsel disclosed these concerns to counsel for Bespoke, Goldberg did not convey the claims before his termination on September 22, 2022. *See* Z. Vichinsky Aff., ¶¶ 8-12. This failure in pleading prevents Goldberg from plausibly pleading that his termination occurred in response to a prior protected disclosure.

Goldberg failed to plausibly plead that Bespoke received notice of an alleged protected activity prior to Goldberg's termination which warrants dismissal because the August 2022 Disclosure merely alleges that Goldberg communicated information to his own attorneys, not to Bespoke. As such, he could not have participated in a protected activity.

Additionally, and fatally, documentary evidence clearly demonstrates that Goldberg could not have reasonably believed Willis was subjected to discrimination by Bespoke in light of Willis' regular, offensive communications identifying himself as the "n-word" and calling himself "Jafar." *See* C. Vichinsky Aff., Exhibit A and Z. Vichinsky Aff., Exhibit J.

Indeed, the documentation also clearly conveys Willis, and no one else, used racially offensive language in referring not only to himself, but to clients of Bespoke. *See* Z. Vichinsky Aff., ¶ ¶ 54, Exhibit P.

Moreover, Goldberg's pleading of discriminatory behavior is implausible because Goldberg supervised Willis. Thus, Goldberg's pleading implicates himself for allegedly failing to address what Goldberg purportedly "reasonably" believed constituted discrimination. Goldberg's implicit self-recrimination renders his claims of unlawful discrimination against Willis implausible.

Accordingly, Goldberg's claim for retaliation under Section 1981 must be dismissed in its entirety.

**CONCLUSION**

For the foregoing reasons, Goldberg's Complaint must be dismissed in its entirety.

Dated: Purchase, New York
     August 7, 2023

        Respectfully submitted,

        **MILBER MAKRIS PLOUSADIS**
        **& SEIDEN, LLP**

By:     *Leonardo D'Alessandro*
        Leonardo D'Alessandro, Esq.
        Michael A. D'Auria, Esq.
        *Attorneys for Defendants*
        *Bespoke Real Estate LLC, Bespoke Luxury*
        *Marketing LLC, Bespoke Real Estate Florida LLC,*
        *Zachary Vichinsky and Cody Vichinsky*
        100 Manhattanville Road, Suite 4E20
        Purchase, New York 10577
        (914) 681-8700

TO:    {via PACER}